CASTLEBERRY *vs.* THE STATE OF GEORGIA.

1. A ditch to convey water for mining purposes includes any dam connected therewith which is necessary to maintain the accustomed flow of water into and along the ditch. To cut down any such dam, is to cut, injure and damage the ditch.

2. Where the sole share holder in a corporation is in actual possession and use of the corporate property, such as a ditch to conduct water for mining purposes, an indictment for injuring such property need not name or refer to the corporation, but may describe the property as belonging to the share-holder as a natural person. His possession and use are sufficient *indicia* of ownership.

3. To justify cutting down a dam which constitutes a necessary part of a ditch in another person's use and possession, a mere assertion of the title to the dam, or to the water it controls, or to the ditch, will not suffice; the asserted title, or at least some apparent or probable right, must be proved.

Criminal law. Indictment. Corporations. Stockholder. Before Judge UNDERWOOD. Lumpkin Superior Court. September Term, 1878.

Reported in the opinion.

M. G. Boyd, for plaintiff in error, cited Code, §§742, 753, 4611, 4683 ; acts of 1872, p. 317.

Thomas F. Greer, solicitor-general ; W. P. Price, for the state.

Bleckley, Justice.

The indictment was for a misdemeanor, and was based on section 4623 of the Code, which is in these terms : " If any person or persons shall unlawfully, willfully, and maliciously cut, break down, destroy, or in any manner hurt, damage, injure or obstruct, or shall counsel and assist, or advise any person or persons in any manner to hurt, damage, injure, obstruct, break down, or destroy any ditch or ditches, canal or canals, flume or flumes, dome or domes, tunnel or tunnels, made, constructed, erected or used to control and convey water to any mine or mines for mining purposes, or any of the appurtenances to such ditch or ditches, canal or canals, flume or flumes, dome or domes, tunnel or tunnels, belonging or appertaining, such person or persons so offending, shall be liable to be indicted for a misdemeanor, and on conviction, shall be fined or imprisoned, or both, at the discretion of the court." The indictment charged that on a certain day, in the county of Lumpkin, Elisha F. Castleberry did, unlawfully and with force and arms, willfully and maliciously cut, break down, damage, injure and obstruct the mineral ditch or canal of one John A. Parker, upon a certain described lot of land, and that the ditch was made, constructed, erected and used to control and convey water to a gold mine, for mining purposes.

Parker testified that the ditch was in his possession, and that it conveyed water to his mine, and also to another mine that he held by lease; that the water at the former of these gave out, and that, on going up the ditch at a certain time to see what was the matter, he found "the dam cut down ;" that the defendant was there and said he cut it,

saying it was his property, and that he wanted to use the water himself; that witness had been in possession eight or ten years, having gone into possession the first or second year after the war; that witness and his brother had the ditch chartered under the name of Ralston Branch Mining Company; that he afterwards bought his brother's interest, and was sole owner of the ditch at the time defendant "cut the dam down;" that no damages had ever been assessed for running the ditch through the land, and none tendered or claimed. Another witness testified that he had the ditch cut, some two or three or four years before the war, having obtained permission to cut it from Richard Castleberry, who though not in actual possession, was recognized as owner of the land, or claimed it, it being then "in the woods;" that the ditch was not used during the war; that after the war witness gave Parker permission to use it; and that it conveyed water to the mine leased by witness to Parker.

The jury found the defendant guilty. He moved for a new trial on the usual grounds, and for alleged error of the court in charging the jury. His motion was overruled, and on that error is assigned here.

1. The whole charge is not in the record. Two extracts from it are set out in the motion for a new trial. The first is, "that if the jury find from the evidence that the defendant broke or cut the dam that turned the water in the ditch of John A. Parker, and that Parker was in possession of the ditch, using it for mining purposes, then that was an appurtenance to the ditch or canal, and damaged or interfered with the ditch or canal, the jury would be authorized to find the defendant guilty." This language is somewhat loose and inaccurate, but our belief is that it did not mislead the jury. Its purpose was, to instruct the jury on one of the elements of the case, and only one; which was, the necessary relation of the dam to the ditch in order for the defendant's act to be within the terms of the indictment and the statute. The meaning seems to be that if Parker was in possession of the ditch, using it for mining purpo-

ses, and if the dam turned the water into the ditch, and the defendant cut or broke the dam, he thereby damaged the ditch. In other words, that in the case supposed, the cutting or breaking of the dam would be the cutting or breaking of the ditch, the dam being virtually a part of the ditch if it controlled the water. It may be fairly assumed that elsewhere in the charge, the requisite mental concomitants of the defendant's act, namely, that the act had to be willful and malicious, as well as unlawful, received attention. The fragment of the charge we are considering is, moreover, to be construed in the light of the evidence; and that shows beyond question that the defendant's intermeddling with the dam did damage the ditch to the extent of making the water at Parker's mine "give out." It cannot be ascertained from the record precisely how the dam was located relatively to the ditch. Most probably, it was a continuation of the lower side of the ditch across the channel of the natural stream, where the ditch and the stream united, and was thus a kind of raised wing projecting from the head of the ditch to the opposite bank of the stream, and serving to arrest the flow of the water along the stream, and force it to enter and pass through the ditch. Whether this conjecture be correct or not, there is every indication in the evidence that the dam was essential, and so related to the ditch as that the water would fail when the dam was down. A ditch to convey water for mining purposes, includes any dam connected therewith which is necessary to maintain the accustomed flow of water into and along the ditch. To cut down any such dam, is to cut, injure and damage the ditch.

2. The second extract from the charge of the court reads thus: "If the jury believe from the evidence that John A. Parker bought the interest of his brother in the Ralston Branch Mining Company, and that he is the sole corporator of said company, then the charge in the bill of indictment is good, even if the charge of ownership was required."

Here again the court dealt with but a single element of the case, namely, the correspondence between the evidence and the indictment on the question of title to the ditch.  The evidence was clear that John A. Parker, in whom the indictment laid the property, was in possession, and that was enough.  The charge of the court was amenable to no valid objection from the defendant, for it is certainly true that where the sole share-holder in a corporation is in actual possession and use of the corporate property, such as a ditch to conduct water for mining purposes, an indictment for injuring such property need not name or refer to the corporation, but may describe the property as belonging to the share-holder as a natural person.  His possession and use are sufficient *indicia* of ownership.

3. It was insisted in argument that there could be no conviction, because there had been no payment for the privilege of cutting the ditch, no assessment of damages, nor acquisition of the right-of-way, etc., in the manner necessary under the charter of the Ralston Branch Mining Company.  Acts of 1872, p. 317.  Also, that the land belonged to the defendant, and that in interfering with the dam he was dealing with his own property, and that, at all events, he acted under a claim of right.  Parker had the ditch in his possession, and had long had it.  The evidence does not show that the land belonged to the defendant, or that he was concerned in raising a question as to the non-payment of damages, or the non-acquisition of the right-of-way.  When admitting his interference with the dam, he said it was his, and he wanted to use the water, but he adduced at the trial no evidence of the foundation or of the good faith of his claim.  It was not he, but one Richard Castleberry who claimed the land prior to the war, and gave permission for the ditch to be cut.  The first we hear of any claim by the defendant was when he avowed his apparent trespass.  To justify cutting down a dam which constitutes a necessary part of a ditch in another person's use and

possession, a mere assertion of title to the dam, or to the water it controls, or to the ditch, will not suffice ; the asserted title, or at least some apparent or probable right, must be proved.

Judgment affirmed.